**In re Steve OTERO and Tina Marie Otero, Debtors.**

**Bankruptcy No. 84–01749–N.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 1, 1985.

Dale V. Berning, Virginia Beach, Va., for debtors.

Mark Utecht, U.S. Atty., Norfolk, Va., S. David Schiller, Asst. U.S. Atty., Richmond, Va., for United States.

David R. Levin, Portsmouth, Va., trustee.

Debera K. Frick, Norfolk, Va., U.S. Trustee.

## OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

Steve and Tina Marie Otero (hereinafter the Oteros), members of the United States Navy, filed a joint voluntary petition under Chapter 13 of Title 11 of the United States Code on December 21, 1984. With the petition the Oteros filed a Chapter 13 plan in which they proposed to pay the unsecured creditors a dividend of 50% of their claim.[1]

The United States Navy (hereinafter Navy) through the Director of Navy Family Allowance represents the largest unsecured claim of the Oteros. On February 25, 1985, the United States of America, for and on behalf of the United States Navy filed an objection to the confirmation of the Oteros' plan. The Navy objected to the confirmation of the plan on two grounds:

(1) The plan has not been proposed in good faith. 11 U.S.C. § 1325(a)(3); and

(2) The plan does not provide for all of the debtors' disposable income of the next three years to be paid into the plan. 11 U.S.C. § 1325(b)(1)(B).

The Court conducted a confirmation hearing on March 19, 1985, and heard the objection of the Navy.

Through the uncontradicted testimony of Hubert Aigner, Deputy Dispersings Officer at Oceana, Virginia, the Navy established that the claim arose out of overpayment of BAQ and BHA housing allowances. The Navy alleged that these overpayments were caused by wilful, misrepresentations made by the debtor on Naval Dependency 602R Forms of the Navy. Mr. Aigner testified that a Naval 602R form, dated February 10, 1982, incorrectly listed Vicki Lynn Lemons Otero as the spouse of Steven Otero. Mr. Aigner knew this information to be false because of Mr. Otero's statement that the marriage between Steve Otero and

---

1. In oral argument the debtor conceded that a 100% plan was proposed relative to the claim of  The U.S. Navy and we proceed on that premise.

Vicki Lynn Lemons Otero had been dissolved on October 1, 1979. Mr. Aigner testified that another Naval Dependency 602R Form, falsely listed Vicki Lynn Lemons as Steve Otero's wife. This form is dated December 2, 1983; this is barely one month after the marriage of Steve Otero to Tina Marie on October 15, 1983. December 2, 1983, was the date that Steven Otero needed to certify his marital/dependency status to his new commander. These forms demonstrate false reports.

Mr. Aigner testified concerning other falsehoods on Dependency Form 602R dated November 9, 1984. This form incorrectly listed May 12, 1983 in Chapel Hill, North Carolina as the place and time of marriage. Mr. Aigner's uncontradicted testimony established that this information was incorrect; the marriage took place on October 15, 1983. The form further indicated that Mr. Otero had not been married before by a "no" answer to question 43. This information was also false in that Mr. Otero had been married to Vicki Lynn Lemons Otero prior to his marriage to Tina Marie Otero.

Steve Otero and Tina Marie Otero did not testify at the Confirmation Hearing. Both debtors invoked their Fifth Amendment right against self-incrimination.[2]

## CONCLUSIONS OF LAW

The United States objects to the confirmation of the Oteros' Chapter 13 Plan on two grounds. Firstly, the United States contends that the plan was not proposed in good faith. 11 U.S.C. § 1325(a)(3). The government argues that the Bankruptcy Court must examine the circumstances under which the debts were incurred. This is a much broader reading of good faith than the debtors advocate, it argues. Secondly, the United States contends that the plan does not comply with § 1325(b)(1)(B) in that not all of the debtors' disposal income is being paid into the plan.

The debtors refute the broad definition of good faith advocated by the United States. The debtors argue that the Chapter 13 good faith requirement relates to the debtors' good faith in filing the petition and proposing a plan to attempt to repay their debts whatever their nature.

The Fourth Circuit addressed the issue of good faith in *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982). In *Deans*, the Court defined a list of factors to consider in the determination of good faith pursuant to 11 U.S.C. § 1325(a)(3):

(1) The percentage of proposed repayment;

(2) The debtor's financial situation;

(3) The period of time payment will be made;

(4) The debtor's employment history and prospects;

(5) The nature and amount of unsecured claims;

(6) The debtor's past bankruptcy filings;

(7) The debtor's honesty in representing facts;

(8) Any unusual or exceptional problems facing the particular debtor.

*Deans*, 692 F.2d at 972.

In listing these factors, the Fourth Circuit emphasized the cumulative nature of these factors, "[a]lthough the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order to fairly apply the statute as now written." *Deans*, 692 F.2d at 972.[3]

In a court's examination of the good faith requirement under 11 U.S.C. § 1325(a)(3), the distinction between Chapter 7 dischargeability and Chapter 13 good faith *must* be respected. Chapter 13 is a distinct chapter of the Bankruptcy Code enacted by Congress with its own, liberal discharge provision. *See In Re Seely*, 6 B.R. 309 (Bankr.E.D.Va.1980) and 11

**2.** Court martial proceedings are pending against him.

**3.** Other circuits have cited the Fourth Circuit's opinion in *Deans* with approval. *See, In Re Estus*, 695 F.2d 311 (8th Cir.1982); and *In re Mary E. Johnson*, 708 F.2d 865 (2nd Cir.1983).

U.S.C. § 1328. Chapter 7 is an entirely distinct chapter of the Bankruptcy Code enacted by Congress with its own, limited discharge provisions. 11 U.S.C. § 727.

■ The Fourth Circuit recognized this distinction. In establishing the totality of the circumstances test, the Fourth Circuit refused to emasculate the discharge provision of Chapter 13 by reading the individual bars to discharge that exist in 11 U.S.C. § 727 into 11 U.S.C. § 1325(a)(3). The totality of the circumstances test does protect the integrity of the Bankruptcy Code. Chapter 13 exists to allow an individual debtor, who is in financial difficulty, whatever the cause, to develop a repayment plan to serve as a flexible vehicle for debt repayment. *Deans*, 692 F.2d at 971. As interpreted by the Fourth Circuit, the good faith requirement acts as a safety valve keeping debtors from the benefits of Chapter 13 who would misuse them.

Other courts have confirmed Chapter 13 plans composed of a majority of wilful, fraudulent debts. In *In re Slade*, 15 B.R. 910 (Bankr. 9th Cir.1981), a Bankruptcy Appellate Panel of the Ninth Circuit confirmed a Chapter 13 plan in which a majority of the unsecured claims originated through embezzlement. In *In re Vratanina*, 22 B.R. 453 (Bankr.N.D.Ill.1982), a Bankruptcy Court in Illinois confirmed a Chapter 13 plan in which a major portion of the debt originated through conversion.

In each of the above cases the court's analysis used a narrow definition of good faith. Each court limited its examination of good faith to the debtor's good faith in filing and disclosing information to the Bankruptcy Court *and to the debtors good faith in attempting to repay their debts.*

A third case in this series allowing confirmation is factually similar to the Oteros' case. In *In re Osborne*, 8 B.R. 200 (Bankr. N.D.Ill.1981), a debtor sought to use a Chapter 13 plan to repay an overpayment of public assistance money from the State of Illinois. As the Oteros' plan, Ms. Osborne proposed a 100% plan. In confirming the Osborne plan, the Bankruptcy Court made significant reference to the fact that the Osborne's Chapter 13 plan proposed to repay all creditors 100% of their claims.

Some recent decisions reject the narrow good faith analysis exhibited in the above decisions. In *In re Sotter*, a debtor attempted to discharge claims incurred through fictitious loans. The New York Bankruptcy Court denied confirmation of the Chapter 13 plan. Factors examined in arriving at this ruling included (1) a minimal 6% repayment schedule and (2) the criminal nature of the major claim against the debtor. *In re Sotter*, 28 B.R. 201, 10 B.C.D. 369 (S.D.N.Y.1983).

*In the Matter of Wright*, 36 B.R. 663 (S.D.Ohio 1984), presented a similar situation. In *Wright* a debtor attempted to discharge under Chapter 13 a crime victim's claim of restitution. The restitution had been ordered by the state courts of Ohio as a prerequisite to the debtor's grant of probation. The Ohio Bankruptcy Court denied confirmation of the plan pursuant to 11 U.S.C. § 1325(a)(3) *citing the low payment percentage* and the inconsistency in allowing the Bankruptcy Court to discharge a debt entangled in the criminal prosecution of a state proceeding. *Wright*, 36 B.R. at 666.

■ A debtor's pre-petition conduct is no longer insulated from the court's scrutiny and dishonest debtors may no longer seek Chapter 13 protection indiscriminately. *In re Chase*, 28 B.R. 814 (D.Md. at Rockville 1983) *citing Memphis Bank & Trust Company v. Whitman*, 692 F.2d 427 (6th Cir. 1982).

## THE BOTTOM LINE

What to do? What Otero did is reprehensible. If there is criminal wrongdoing, courts exist for that purpose. Here we deal with debts. We find for these purposes he cheated the Navy out of allowance funds to which he was not entitled. He owes that money.

What is the best way to repay it? Outside of bankruptcy relief he can be pursued as a fox before the hounds. Will they get

their money? Maybe. Maybe not. Chapter 13 of the Bankruptcy Code provides a method under the jurisdiction of this Federal Court to repay it all, 100%. The Court has control of his regular income. They get paid and he survives as a human being.

Consider the orderliness of a Chapter 13 pay back. Consider the alternatives.

■ It is not bad faith under *Deans* or otherwise having committed a great wrong to seek to repay it under a system the Congress has established.

### DISPOSABLE INCOME

■ The United States objection pursuant to 11 U.S.C. § 1325(b)(1)(B) forces this Court to interpret a provision added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Title 11 Section 1325(b)(1)(B) states:

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

This Court notes that the statute reads "court *may* not approve." The term may possess a voluntary tone, a majority of the time as opposed to "shall." In the above statute, Congress could have made the section mandatory. However, this was not done. Therefore, this Court reads the section as a voluntary section to be applied at the Court's discretion.

The Court further finds that a difference of $117.00 a month is not a significant or substantial amount to be extracted from the debtors. It was not intended to take the last son. A cushion of money is necessary in Chapter 13 budgeting to guard against life's unexpectancies. It is not in the public interest to squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan.

Although the Court is concerned with what has been alleged in this case, the Court has concerns over the future of these debtors. How does the Navy expect to realize its claim?

The debtors may proceed under their Chapter 13 plan. Court martial proceedings are pending on Steve Otero with the possible result of Steve Otero's dismissal from the service. Once out of the Navy, Mr. Otero will be without visible means of support. The bankruptcy schedules do not reveal valuable, attachable assets. Even if the United States Navy had won the confirmation battle, who would have won the war?

The plan is confirmed.

IT IS SO ORDERED.