**In re Shane G. SUTLIFF, Debtor.**

**Bankruptcy No. 87–00478.**

United States Bankruptcy Court,
N.D. New York.

Oct. 23, 1987.

James D. Selbach, Syracuse, N.Y., for debtor.

Warren V. Blasland, Syracuse, N.Y., trustee.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This matter comes before the Court on objections raised by the Chapter 13 Trustee to the confirmation of Shane G. Sutliff's ("Debtor") Chapter 13 plan, pursuant to § 1325 of the Bankruptcy Code, 11 U.S. C.A. §§ 101–1330 (West 1979 & Supp.1987) ("Code").

### FACTS

Debtor filed his petition for relief under Chapter 13 of the Code on April 8, 1987. Debtor is unmarried and thirty years of age. He resides in Syracuse, New York where he has been employed as a supervisor by the Skytop Office Building of Syracuse University for the past six years.

Debtor has scheduled approximately $25,000.00 in unsecured claims. Two of the nineteen listed claims totaling about $20,-000.00 are comprised of six or seven National Direct Student Loans which Debtor incurred in the years 1975 through 1980.

According to his schedules, Debtor has made payments on these debts.

Debtor owns no real property nor automobiles, holds one savings account and lists personal property worth $420.00. He has never been the subject of any bankruptcy petition prior to the current one.

Debtor's monthly budget discloses a net income of $760.00 and current expenses amounting to $660.00:

| | |
|---|---|
| $350.00 | rent |
| 100.00 | utilities [1] |
| 100.00 | food |
| 25.00 | clothing |
| 10.00 | laundry and dry cleaning |
| 10.00 | medical and drug expenses |
| 15.00 | transportation |
| 50.00 | recreation |

Under his Chapter 13 plan, he proposes to pay $100.00, the monthly difference between his net income and expenses, to his creditors for sixty months. After the Trustee's fees, these payments will generate at least a twenty percent distribution on creditors' claims.

While none of the creditors have filed objections to the plan, the Trustee argues that it was not filed in good faith and that the monthly payments should be larger because of an excessive allotment for recreation in the monthly budget.

## ISSUES

This case presents two related issues: 1) whether Debtor made a good faith filing of his Chapter 13 plan, as required by Code § 1325(a)(3), particularly when eighty percent of his obligations are otherwise non-dischargeable student loan debts, Code § 523(a)(8); and 2) whether the monthly amount Debtor budgeted for recreation exceeded what is "reasonably necessary" for his "maintenance or support" within the meaning of Code § 1325(b)(2).

## JURISDICTION

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.A. § 1334 and 28 U.S.C.A. § 157(a), (b)(1), and (b)(2)(L) (West 1979 & Supp.1987).

1. The Court notes that Debtor budgeted his projected, rather than his actual, rent and utility

## DISCUSSION

Code § 1325 governs the confirmation of Chapter 13 plans. Code § 1325(a) sets out six requirements that must be satisfied before the Court can confirm a Chapter 13 plan. H.R.Rep. No. 595, 95th Cong., 1st Sess. 430, *reprinted in* 1978 U.S.C.Code & Admin.News 5963, 6385; S.Rep. No. 989, 95th Cong. 2d Sess. 142, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5928. One of these conditions is that "the plan has been proposed in good faith and not by any means forbidden by law." Code § 1325(a)(3).

The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"), enacted two additional grounds for confirmation denial in Code § 1325(b), independent of Code § 1325(a). These two alternative bases, available only upon trustee or creditor objection are 1) the failure to fully pay all unsecured creditors (the full payment test), and 2) the failure to apply all of the debtor's disposable income within the following three years to the plan (the ability-to-pay or disposable income test).

The Court will first consider whether Debtor's Chapter 13 plan complies with the good faith requirement and then scrutinize Debtor's budget with respect to disposable income.

Good faith is the central, if not the most important finding in the Chapter 13 confirmation process. *Georgia Railroad Bank & Trust Co. v. Kitchens (In re Kitchens)*, 12 B.R. 654, 658 (S.D.Ga.1981), *aff'd.*, 702 F.2d 885 (11th Cir.1983) (per curiam). It has been described as the "policing mechanism" of the bankruptcy courts. *In re Chase*, 43 B.R. 739, 745 (D.Md.1984). The Code does not define good faith but legislative history does not reveal any Congressional intent to give it a different meaning than it had historically. *See* H.R. Rep. No. 1195, 96th Cong. 2d Sess. 24–26 (1980), *reprinted in* 5 COLLIER ON BANKRUPTCY (15th ed. 1987) ¶ 1325.04 at

expenses because he planned to move in the "near future".

1325.14 (distinguishing the "good faith efforts" test, which looks to the debtor's present and future ability to make Chapter 13 plan payments, from the traditional "good faith" test, which examines the debtor's intentions and the legal effect of a Chapter 13 plan confirmation in light of the Chapter 13's spirit and purpose).

The consensus of case law holds that good faith is to be determined by weighing the totality of the facts and circumstances on a case by case basis. *In re Metz,* 820 F.2d 1495 (9th Cir.1987); *Public Finance Corp. v. Freeman,* 712 F.2d 219 (5th Cir. 1983); *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983); *Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865 (2d Cir.1983) (per curiam); *In re Kitchens, supra; United States v. Estus (In re Estus),* 695 F.2d 311 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982); *Barnes v. Whelan (In re Barnes),* 689 F.2d 193 (D.C.Cir.1982); *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982); *Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426 (7th Cir.1982); *See generally* 5 COLLIER, *supra,* at ¶ 1325.04.

Drawing on the legislative history surrounding bankruptcy amendments proposed earlier, the Fifth Circuit most recently concluded that "the totality of the circumstances test ... exacts an examination of all of the facts in order to determine the bona fides of the debtor." *In the Matter of Chaffin,* 816 F.2d 1070, 1074 (5th Cir. 1987). This involves a search into the debtor's conduct and state of mind, as it relates to the Chapter 13 plan's proposal. *In the Matter of Yavarkovsky,* 23 B.R. 756, 759 (S.D.N.Y.1982).

Recently, after noting over 300 reported "good faith" decisions, a court compiled a list of "good faith" factors: 1) the probable duration of the plan, 2) the frequency of bankruptcy filing, 3) the accuracy of bankruptcy papers, 4) the debtor's motivation and sincerity of Chapter 13 filing, 5) the degree of preferential treatment between classes of creditors, 6) the circumstances of incurring debt, 7) the nature and quantity of unsecured debt, 8) if the debt was otherwise nondischargeable, 9) the amount of attorney's fees, 10) the burden of administration, 11) special circumstances like special medical costs, 12) the debtor's degree of effort, 13) the debtor's ability to learn, 14) the debtor's employment history and likelihood of future raises, 15) the percentage of debt repayment, 16) the amount of proposed payments, 17) the amount of budget surplus, and 18) the general tests of "fundamental fairness", "totality of circumstances" and "honesty of intention". *Nelson v. Easley (In re Easley),* 72 B.R. 948, 950–55 (Bankr.M.D.Tenn.1987) (and cases cited therein). *See also Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986); *In re Makarchuk,* 76 B.R. 919, 922–924 (Bankr.N.D.N.Y.1987), (using the eleven "good faith" factors enumerated by the Eighth Circuit in *In re Estus, supra* ). Thus, courts endorse a good faith inquiry broad in scope, ultimately converging on "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal." *In re Kitchens, supra,* 702 F.2d at 888 (quoting 9 COLLIER ON BANKRUPTCY ¶ 9.20 at 319 (14th ed. 1978)). *But see In re Gathright,* 67 B.R. 384 (Bankr.E.D.Pa.1986) (good faith as used in Code § 1325(a)(3) requires nothing more than full and complete disclosure and honesty of purpose by the debtor to consummate proposed plan payments and does not authorize courts to weigh factors properly considered by other BAFJA-enacted Code provisions).

■ As detailed above, Debtor owes approximately $25,000.00 in unsecured obligations. Neither the size of his proposed monthly payments—$100.00 nor the resultant twenty percent payout to his creditors, in and of themselves, warrant a finding of bad faith. *In re Williams,* 66 B.R. 646, 647 (Bankr.C.D.Ill.1986); *In re Kazzaz,* 62 B.R. 308, 311–15 (Bankr.E.D.Va.1986). A good faith proposal of a Chapter 13 plan does not require the substantial repayment of unsecured creditors. *Deans v. O'Donnell, supra,* 692 F.2d at 971; *In re Rice,* 72 B.R. 311, 312 (D.Del.1987); *In re Makarchuk, supra,* 76 B.R. at 922. *Cf.* Code § 1325(a)(4) (mandating minimum payment to general unsecured creditors); *In re*

*Greer,* 60 B.R. 547, 553–54 (Bankr.C.D. Cal.1986).

Furthermore, Debtor's use of Chapter 13 statutory provisions to discharge his otherwise nondischargeable student loans, which comprise four-fifths of his total debt, is also an insufficient ground for denying confirmation. *In re Estus, supra,* 695 F.2d at 317; *In re Otero,* 48 B.R. 704, 706–07 (Bankr.E.D.Va.1985); *In re McAloon,* 44 B.R. 831, 836–37 (Bankr. E.D.Va.1984); *In re Matter of Lambert,* 10 B.R. 223, 226 (E.D.N.Y.1981). Even taken together, these three facts cannot establish bad faith absent a review of all the militating factors of Debtor's case. *Deans v. O'Donnell, supra,* 692 F.2d at 972. *See also In re Estus, supra,* 695 F.2d at 316.

Continuing its broad inquiry of Debtor's Chapter 13 plan, the Court is further guided by the criteria the *Easley* court considered. The length of Debtor's plan, exceeding by two years the statutory period mandated in Code § 1325(b)(1)(B), indicates his sincerity and honest intentions in repaying his creditors. *In re Kourtakis,* 75 B.R. 183, 187 (Bankr.E.D.Mich.1987). This impression is bolstered by the fact that this is the first time Debtor has filed for bankruptcy.

Moreover, Debtor incurred the bulk of his debts—student loans—over seven years ago, and when they became due, he began making payments, he did not file a bankruptcy petition. The remainder of Debtor's loans is consumer debt, Code § 101(7), and seems to be the result of financial mismanagement. Preferential treatment between different classes of creditors is not at issue here since all of Debtor's creditors are unsecured. Debtor's attorney's fees of $500.00 are standard in this district and while perhaps burdensome, are not crippling and do not represent a significant portion of his total debt. The implementation of Debtor's plan poses no administrative difficulties and his case lacks any special circumstances. Furthermore, Debtor has a stable employment history and a steady job and will be able, this Court concludes, to meet the monthly demands of his proposed plan.

Debtor's monthly expenses schedule, which directly bears on his proposed payments and his budget surplus, appears to be accurate but for two discrepancies. First, Debtor lists his future rent and utility expenses, not his actual costs, and explains at the schedule's conclusion that he plans to move shortly. The Court finds this inaccuracy to be part and parcel of Debtor's effort to honestly and fully disclose an imminent change affecting his economic situation, rather than a false statement or an attempt to mislead the Court. Secondly, the Court is troubled by the $50.00 Debtor allots each month as a recreational expense. This figure amounts to almost six and one-half percent of his net monthly income and is fifty percent of his proposed monthly payment. If reduced, it would increase the payout to his creditors proportionately.

Debtor obviously relies on the disposable income definition in Code § 1325(b)(2) for his recreational expenditure. Since this vaguely worded provision is the subject of particularly uninformative legislative history and unsettled case law, see *infra,* the Court is reluctant to characterize its inclusion as an unfair manipulation of the Code. Consequently, the Court declines to impute bad faith to either of these two "inconsistencies". *See In re Greer, supra,* 60 B.R. at 554. *In re Gathright, supra,* 67 B.R. at 390. "Only where there has been a showing of serious debtor misconduct or abuse should a Chapter 13 plan be found lacking in good faith." ' 5 COLLIER, *supra,* ¶ 1325.04 at 1325–17. *See also In re McBroom,* 51 B.R. 953, 955 (Bankr.W.D. Va.1985) ("bad faith is not presumed").

In sum, based upon the foregoing reasons, the Court concludes that Debtor proposed his Chapter 13 plan in good faith.

A Chapter 13 plan meeting all six conditions in Code § 1325(a), including good faith, still cannot be confirmed if, on objection, it fails to satisfy either the full payment or disposable income tests in Code § 1325(b). As Debtor is not proposing to pay his claims in full, it is the latter test,

and its relation to Debtor's plan, that is before the Court.

BAFJA defined disposable income as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor". Code § 1325(b)(2)(A). (The second part of this definition, Code § 1325(b)(2)(B), pertains to a debtor engaged in business and is inapplicable to the case at bar.) On its face, this definition is not useful since it stops short of delineating the standard to apply to determine that part of the debtor's income which is "reasonably necessary" for his maintenance or support, i.e. non-disposable income.

The legislative history surrounding this section is sparse, save an undifferentiated reference to several levels of Department of Labor cost-of-living figures in a Senate report on similar amendments proposed earlier. S.Rep. No. 65, 98th Cong. 1st Sess. 22 (1983), *cited in* 5 COLLIER, *supra*, ¶ 1325.08 at 1325–48. A leading commentator deduces that "it is safe to say only that the poverty level was clearly not contemplated, since the annual publication of those statistics emanates from the Department of Health and Human Services and not from the Department of Labor [as here]." 5 COLLIER, *supra*, ¶ 1325.08 at 1325–48.

Other Congressional discussion generated by the 1984 consumer credit amendments, which included Code § 1325(b) and much of chapter 13, reveal a concern that a debtor's "fresh start" not become a "head start". 130 Cong.Rec. S8894 (daily ed. June 29, 1984), *reprinted in* Bkr–L Ed., CODE COMMENTARY AND ANALYSIS § 46.53.5 (1987). Chapter 13 plans were also characterized as "substantial effort[s] by the debtor to pay his debts" which "may require some sacrifices by the debtor". S.Rep. No. 65, 98th Cong. 1st Sess. 22 (1983) (quoted in *In re Jones,* 55 B.R. 462, 465 (Bankr.D.Minn.1985)). Congress thus revised Code § 1325 in 1984 to curb Chap-

ter 13 abuses and still keep intact its purpose and spirit of "rehabilitation and repayment". *In re Kitchens, supra,* 12 B.R. at 659. Consequently, the development of a "reasonably necessary" standard in the context of Chapter 13 disposable income was left to case law.

Where recreation falls within the spectrum of disposable and non-disposable income, and its measure and scope, is an issue of first impression for the Court.[2]

Courts have refused to confirm Chapter 13 plans that include payments for luxury items. *In re Chrzanowski,* 70 B.R. 447 (Bankr.D.Del.1987) (country club dues, United Way and IRA contributions); *In re Hedges,* 68 B.R. 18 (Bankr.E.D.Va.1986) (recreational boat); *In re Rogers,* 65 B.R. 1018 (Bankr.E.D.Mich.1986) (sports car); *In re Festner,* 54 B.R. 532 (Bankr.E.D.N.C. 1985) (voluntary retirement benefits, stock purchases and stock-secured loan). *Cf. In re Tinneberg,* 59 B.R. 634 (Bankr.E.D.N.Y. 1986) ($12.00 monthly allotment for newspapers and periodicals not unnecessary, luxury expense). *Accord* COLLIER, *supra,* ¶ 1325.08 at 1325–49 ("The debtor's expenses should be scrutinized only for luxuries which are not enjoyed by an average American family.")

However, an inquiry into a debtor's "reasonably necessary" expenses is unavoidably a judgment of values and lifestyles and close questions emerge. *Compare In re Sturgeon,* 51 B.R. 82 (S.D.Ind.1985) *with In re Green,* 73 B.R. 893 (Bankr.W.D. Mich.1987) (monthly tithing to church). *See also In re Greer, supra,* 60 B.R. at 552–53 ($75.00 monthly contingency reserve was reasonably necessary expense and may even be mandated by Code § 1325(a)(6)); *In re Otero,* 48 B.R. 704 (Bankr.E.D.Va.1985) (Chapter 13 plan with $117.00 "cushion" confirmed since "necessary in Chapter 13 budgeting to guard against life's expectancies"). It may also raise unsettling constitutional and moral issues since what is reasonably necessary to one debtor may not be reasonably neces-

---

**2.** Recreation has been defined as:
a. the act of recreating or the state of being recreated: a refreshment of the strength and spirits after toil, b. a means of getting diversion or entertainment WEBSTER'S THIRD NEW INT'L DICTIONARY (1981 ed.).

sary to another. *See, e.g., In re Kitson,* 65 B.R. 615, 619–621 (Bankr.E.D.N.C.1986); *In re Edwards,* 50 B.R. 933, 941 n. 9 (Bankr.S.D.N.Y.1985). A commentator urges that

> ... the court cannot and should not order debtors to alter their lifestyles where there is no obvious indulgence in luxuries ... To engage in such close judgments and supervision would be to contravene the intent of Congress. It would also place impossible burdens on the court in determining the absolute necessity of every expense in each debtor's budget. Since the views of judges on such value-laden issues differ significantly, such an interpretation of the amendments would contravene their purpose of restoring nationwide uniformity to chapter 13.

5 COLLIER, *supra,* ¶ 1325.08 at 1325–49.

Bankruptcy judges, however, are required by different sections of the Code to make similar findings. *See In re Rogers, supra,* 65 B.R. at 1021; *In re Kitson, supra,* 65 B.R. at 619. Courts conduct feasibility tests pursuant to Code § 1325(a)(6), determine undue hardship in the student loan exceptions to discharge in Code § 523(a)(8)(B) and decide "reasonably necessary" exemptions under Code § 522(d)(10)–(11). These judgments are guided by the court's sense of equity, which lies at the foundation of all bankruptcy law. *See Chinichian v. Compolongo (In re Chinichian),* 784 F.2d 1440, 1443 (9th Cir.1986); *In re Bell,* 56 B.R. 637, 641 (Bankr.E.D.Mich.1986).

Courts faced with applying the disposable income definition in Code § 1325(b)(2) have looked at similarly worded provisions in the Code for direction. In denying the confirmation of a Chapter 13 plan, one court relied on the BAFJA-enacted definition of luxury goods and services in Code § 523(a)(2)(C) [3] and a pre-BAFJA Chapter 7 case [4] that construed a "reasonably neces-

sary" phrase in a pension payment exemption provision under Code § 522(d)(10)(E).[5] *In re Jones, supra.*

■ The *Jones* court interpreted the "reasonably necessary" standard as one of adequacy, supporting basic needs "not related to [the debtor's] former status in society or the lifestyle to which he is accustomed ...". *In re Jones, supra,* 55 B.R. at 466–67 (quoting *In the Matter of Taff, supra,* 10 B.R. at 107 n. 3). Consequently, the court found the debtor's listed monthly expenses for his children's college and secondary school tuition and for food and house payments excessive. The *Jones* "reasonably necessary" standard has been adopted by other bankruptcy courts. *In re Kitson, supra; In re Hedges, supra; In re Festner, supra. See also In re Greer, supra,* 60 B.R. at 553; *In re Easley, supra,* 72 B.R. at 949.

The Court believes this to be the appropriate standard for reviewing a debtor's disposable income in a Chapter 13 plan. Debtors should not be allowed to continue in the lifestyle that drove them to file bankruptcy and at the expense of their creditors. *See In re Rogers supra,* 65 B.R. at 1022; *Matter of Hale,* 65 B.R. 893, 896–897 (Bankr.S.D.Ga.1986). *See also In re Rice, supra,* 72 B.R. at 312. The Court realizes that "[i]t is not in the public interest to squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan." *In re Otero, supra,* 48 B.R. at 708. However, a Chapter 13 debtor "cannot expect to 'go first class' when 'coach' is available". *In re Kitson, supra,* 65 B.R. at 622. This is not to say that debtors should not enjoy a modicum of pleasure for themselves. "[S]ome recreation is justifiable and beneficial to family harmony and happiness." *In re Edwards, supra,* 50 B.R. at 941 n. 9; *see*

---

**3.** Code § 523(a)(2)(C) excludes "luxury goods and services" from those "goods or services reasonably acquired for the support or maintenance of the debtor or the dependent of the debtor."

**4.** *Warren v. Taff (In the Matter of Taff),* 10 B.R. 101 (Bankr.D.Conn.1981).

**5.** This provision remains unchanged today. The relevant language reads as follows: "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

*also In re Tinneberg, supra,* 59 B.R. at 635.

The few courts who have encountered recreation as an expense in a budget pursuant to a Chapter 13 plan have analyzed it by placing the debtor's overall lifestyle and submitted budget into a reasonable and necessary framework. One court described as "reasonable" the $40.00 per month recreational allotment for a young single woman without dependents who grossed $565.00 a week and proposed to pay $900.00 each month into her plan for four years. *In re Rogers, supra.* This same court, however, denied confirmation of the Chapter 13 plan because it described the balance of debtor's sports car payments (her second car) as a luxury and, consequently, recreation. *Id.* at 1022. When added to her monthly allotment for recreation, the *Rogers* court found the total amount excessive. *Id.*

Similarly, the court in *Kitson* refused to confirm a Chapter 13 plan with a budget that disclosed $433.00 for miscellaneous expenses, including entertainment. There, the husband and wife debtors had four children and a net monthly income of about $6,000.00. *In re Kitson, supra.* The *Kitson* court relied on the *Jones'* court's interpretation of the "reasonable and necessary" standard and case law construing the dismissal for substantial abuse provision in Chapter 7. Code § 707(b).[6]

The Court is in accord with this approach. The disposable income inquiry conducted in reviewing Chapter 13 petitions under Code § 1325(b) is similar to that used to review Chapter 7 petitions for substantial abuse under Code § 707(b).[7]

This is because one of the determinations to be made in a Chapter 7 substantial abuse review is whether the petition might be better filed under Chapter 13 or Chapter 11. "The primary factor that may indicate a substantial abuse is the ability of the debtor to repay the debts out of future disposable income." 4 COLLIER, *supra,* ¶ 707.07 at 707–17. *See, e.g., In re Peluso,* 72 B.R. 732, 739 (Bankr.N.D.N.1987) (Gerling, J.); *In re Struggs,* 71 B.R. 96, 97–98 (Bankr.E.D.Mich.1987); *In re Hudson,* 64 B.R. 73, 74–75 (Bankr.N.D.Ohio 1986); *In re Bell, supra,* 56 B.R. at 642; *In re Grant,* 51 B.R. 385, 391, 393–94 (Bankr.N.D.Ohio 1985); *In re Edwards, supra,* 50 B.R. at 937–38; *In re Bryant,* 47 B.R. 21, 24, 26 (Bankr.W.D.N.C.1985). *See generally* 4 COLLIER, *supra,* ¶ 707.05 (discussing the procedure the court uses to determine substantial abuse under Code § 707(b).

The amount of recreation in each Chapter 13 budget is a fact question that must be determined in the individual context of each debtor and his dependents. *In re Easley, supra,* 72 B.R. at 949. Turning to the facts of the case at hand, the Court notes that Debtor's submitted Chapter 13 budget allocates more than six and one-half percent of his net monthly income to recreation. His proposed monthly payments into the plan are twice that amount. The Court finds this to be a high and unreasonable sum for entertainment, in light of Debtor's single marital status and the regional cost of living in the area where he resides.

The Court recently examined a Chapter 7 debtor's disposable income while reviewing his petition for substantial abuse under

---

6. Code § 707(b) provides:
   After notice and a hearing, the court, on its own motion or by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

7. It has been suggested that the Chapter 13 standard for disposable income is stricter than that used in Chapter 7:

[W]hile the 'disposable income' of Chapter 13 may indeed compel the court to determine the debtor's support needs down to the last dollar, a standard which conditions dismissal on 'abuse' should afford the debtor considerably more leeway both with respect to what items are considered necessary expenses and the amount of money to be devoted to those items.

Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse",* 60 Am.Bankr.L.J. 33, 37 (Winter 1986).

Code § 707(b). *In re Peluso, supra.* There, the Court dismissed the Chapter 7 petition after finding that the debtor, whose debts were primarily consumer, had sufficient income to fund a Chapter 13 plan. *Id.* In *Peluso,* the Court did not question the debtor's listed monthly expense of $100.00 for recreation, but his net monthly income was three times that of Debtor Sutliff. Additionally, while both debtors resided in central New York, Debtor Peluso claimed exemptions, was separated and had two dependents (children). In contrast, the sum for recreation Debtor apportions in his budget is high and its adjustment would only increase the distribution to creditors, without creating undue hardship on the Debtor. The Court cannot confirm a plan with an entertainment allowance which represents a relatively large chunk of the debtor's net monthly income and half of the proposed monthly payment.

■■■ Although the Trustee has only objected to the fund for recreation, it is also the Court's obligation under Code § 1325(b) to examine the other listed expenses in Debtor's budget using the "reasonably and necessary" standard. *Cf. In re Jones, supra,* 55 B.R. at 466–67. The Court's inspection of Debtor's Chapter 13 plan is not circumscribed by the Trustee's objections. *Id.* The Court finds the remaining living expenses to be at amounts reasonably necessary to adequately support the Debtor, a single thirty year old man living in central New York state.

## CONCLUSION

The Court concludes that although the Debtor proposed his plan in good faith, pursuant to Code § 1325(a)(3), he did not commit to it all his projected disposable income, as mandated by Code § 1325(b). Accordingly, it is

ORDERED that the Trustee's objection to plan confirmation is sustained and the confirmation of Debtor's Chapter 13 plan is denied without prejudice to the Debtor's right to submit a modified plan.