In re Robert C. ASHTON, Debtor.

Bankruptcy No. 2–87–01619.

United States Bankruptcy Court,
S.D. Ohio, E.D.

March 9, 1988.

sion for only a ten percent (10%) dividend to holders of allowed unsecured claims, including a $5,000 debt to Fifth Third alleged to be nondischargeable were this a Chapter 7 proceeding. Fifth Third also asserts that the proposed plan payments do not represent the debtor's best efforts as required by 11 U.S.C. §1325(b).

In response, the debtor indicates that his plan is confirmable despite the low dividend, because he is proposing to pay all his disposable income into the Chapter 13 plan. He also argues that even if it can be assumed that the debt to Fifth Third would be nondischargeable in a Chapter 7 proceeding, that fact is irrelevant. In support of that position, he cites Congress' intent, as expressed in 11 U.S.C. § 1328(a), to provide a broader discharge of debts in Chapter 13 than in Chapter 7. 11 U.S.C. § 1328(a). He also contends that his obligation to Fifth Third would be dischargeable in a Chapter 7 case.

Robert H. Farber, Jr., Columbus, Ohio, for debtor.

Frank M. Pees, Worthington, Ohio, Chapter 13 trustee.

Ralph E. Dill, Columbus, Ohio, for Fifth Third Bank of Columbus.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on an objection to confirmation of the Chapter 13 plan proposed by debtor Robert C. Ashton. The objection, filed by Fifth Third Bank of Columbus ("Fifth Third"), was heard by the Court.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

In its objection, Fifth Third contends that the debtor's plan should not be confirmed because it was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). That allegation is based upon the plan's provi-

### FINDINGS OF FACT

On November 1, 1986, the debtor applied to Fifth Third for a $5,000 loan. Fifth Third granted the loan on that same day, and the debtor executed a promissory note in favor of Fifth Third in the principal amount of $5,000 with an initial annual interest rate of 15%. The proceeds from that loan obligation, which has since been reduced to $4,200, were to be used to pay outstanding bills and consolidate a number of the debtor's obligations into one monthly payment.

At the time the debtor applied for the loan, he was required to make monthly child support payments for one child in the amount of $750. Although a space was provided on the loan application for disclosure of that child support obligation, the debtor left that space blank. His testimony was that he had no intent to mislead Fifth Third and that, although he had a legal obligation for that child support, he was unable to pay $750 each month and was not paying it at that time. Subsequently that obligation was reduced to its current level of $365 each month.

Approximately five and one-half months after the loan transaction with Fifth Third, the debtor filed a petition and plan under Chapter 13 of the Bankruptcy Code. The schedules filed in his case show $6,455 in unsecured debts of which $4,562.92, or approximately 75%, is owed to Fifth Third. The schedules also indicate secured debts totalling $30,000, representing obligations for a mobile home and a late model leased vehicle. Priority unsecured debts are shown in the amount of $349.

The debtor's Chapter 13 statement indicated that he received monthly take-home pay of $1,667 from two jobs. He also lists the following ongoing monthly expenses:

| | |
|---|---|
| Lot Rent for Mobile Home | $125.00 |
| Mortgage Payment for Mobile Home | $205.00 |
| Utilities | $135.00 |
| Food | $200.00 |
| Clothing | $ 50.00 |
| Laundry and Cleaning | $ 20.00 |
| Newspapers | $ 15.00 |
| Medical and Drug Expenses | $ 20.00 |
| Auto Insurance | $ 35.00 |
| Transportation | $140.00 |
| Recreation | $ 20.00 |
| Child Support Payments | $365.00 |
| Car Lease Payment | $254.00 |

After paying those expenses, the debtor's excess monthly income is $83.00. From that amount he proposes to pay $82.00 to the Chapter 13 trustee for 38 months for a 10% dividend to holders of allowed unsecured claims.

By the time of the hearing on confirmation, the debtor no longer held two jobs, but instead had begun a new job in Cleveland, Ohio. His annual gross salary for that new employment is estimated to be about $24,000.

## ISSUES OF LAW

This matter presents two issues for the Court's determination. First, is a Chapter 13 plan proposed in good faith when it offers only a 10% dividend to allowed unsecured claims, where 75% of that unsecured debt is an obligation allegedly nondischargeable if the case had been filed under Chapter 7? Second, since the plan does not propose a 100% dividend to unsecured claimants, is the debtor dedicating all of his disposable income to the plan as required by 11 U.S.C. § 1325(b)(1)(B)?

## CONCLUSIONS OF LAW

### A. The Good Faith Issue

■ A plan which proposes a low percentage dividend to unsecured claimants is not, for that reason alone, proposed in bad faith. *In the Matter of Davis*, 68 B.R. 205 (Bankr.S.D.Ohio 1986); *In the Matter of Chaffin*, 816 F.2d 1070 (5th Cir.1987), *reh'g*, 836 F.2d 215 (1988); *In re Greer*, 60 B.R. 547 (Bankr.C.D.Cal.1986). Following amendment to 11 U.S.C. § 1325 by addition of a new subsection (b), enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the focus of inquiry in low dividend cases, upon objection by a trustee or an unsecured creditor, is an examination of the degree to which the debtor has dedicated all of his projected disposable income for a three year period to the payments to be made under the plan. This new provision is referred to as the "ability to pay" or "disposable income" test. 11 U.S.C. § 1325(b).

■ Satisfaction of the disposable income test does not, however, end the inquiry as to whether a plan has been proposed in good faith. Rather, as set forth in a recent opinion by the Court of Appeals for the Sixth Circuit, that examination focuses upon the totality of a debtor's circumstances, reviewed in light of the spirit and purpose of Chapter 13. *Metro Employees Credit Union v. Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988). The requirement of good faith is designed to permit bankruptcy courts to "preserve the integrity of the bankruptcy process by refusing to condone its abuse." *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936 at 941 (11th Cir.1986), *cert. denied*, — U.S. —, 106 S.Ct. 3343, 92 L.Ed.2d 763.

One of the circumstances to be examined in the totality inquiry and urged upon this Court by Fifth Third, is a debtor's prebankruptcy conduct with his creditors. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). As stated by the *Memphis* court: "We should not allow

a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong." *Memphis,* 692 F.2d at 432. Any such pre-bankruptcy conduct is only one factor in the Court's analysis, however. *Okoreeh–Baah,* 836 F.2d at 1030.

Other factors to be considered in determining whether a debtor's plan has been filed in good faith were set forth in *Georgia Railroad Bank & Trust Co. v. Kull (In the Matter of Kull),* 12 B.R. 654 (S.D. Ga.1981), *aff'd sub nom. In re Kitchens,* 702 F.2d 885 (11th Cir.1983) (cited with approval by *Okoreeh–Baah,* 836 F.2d at 1032). Those concerns include the following:

(a) the amount of income of the debtor and the debtor's spouse from all sources;

(b) the regular and recurring living expenses for the debtor and his dependents;

(c) the amount of the attorney's fees to be awarded in the case and paid by the debtor;

(d) the probable or expected duration of the Chapter 13 plan;

(e) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(f) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;

(g) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;

(h) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;

(i) the circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealing with his creditors;

(j) whether the amount or percentage of payment offered by the particular debtor would operate or be a mockery of honest, hard-working, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;

(k) the burden which the administration of the plan would place on the trustee; and

(*l*) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor.

*Kull,* 12 B.R. at 659.

Additional relevant considerations set forth by the Court of Appeals for the Eighth Circuit include: "the accuracy of the plan's statements of the debts, expenses and ... whether any inaccuracies are an attempt to mislead the court"; and an "analysis of the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7." *United States v. Estus (In re Estus),* 695 F.2d 311 at 317 (11th Cir.1982).

■ After reviewing and balancing those factors which are relevant to this case, the Court finds that the debtor has not violated the purpose or the spirit of Chapter 13 and has proposed his plan in good faith. This Chapter 13 plan is his first bankruptcy filing. His recurring living expenses are not unreasonable in light of his income, and the length of the plan, projected at 36 to 38 months, meets the statutory requirement. Although the percentage offered to unsecured claimants is low, given the time frame within which it will be paid, such dividend is not so minimal that it operates as a mockery of the process. With relatively few creditors involved, the plan also does not place an undue burden on the trustee.

The nature of the circumstances under which the debtor obtained his loan from Fifth Third, however, gives the Court some concern. Although he filed his bankruptcy case some five and one-half months after that transaction, the Court believes that interval is not so close, given the payments made to the creditor during that period, that it can be inferred that the debtor obtained the loan without any intention of repaying it. No evidence exists that he always meant to discharge that obligation

through a Chapter 13 plan or that the debt was otherwise fraudulently incurred. The debtor had no indication the loan might not be granted, and, in fact, it was granted the same day he applied. He failed to be as careful about the application process as he should have been, but his testimony was that his omission of the child support obligation was inadvertent and not by design. Because he was not paying that support despite his legal duty to do so, he did not view that obligation as impacting on his financial difficulties. That testimony is reinforced by the fact that the support obligation was reduced shortly thereafter to $365 each month. In sum, the debtor had financial difficulties which prompted him to secure a bill consolidation loan, but unfortunately, that loan did not resolve his financial woes. On the whole, the Court finds that the evidence does not clearly establish fraud in the procurement of the loan.

■ Even if the obligation to Fifth Third were arguably nondischargeable were this a Chapter 7 proceeding, that fact alone does not establish that the plan was proposed in bad faith. This is especially true where only part of a debtor's obligations are implicated and all other indicia point to good faith. As stated by the Bankruptcy Court for the district of Idaho:

> If it is bad faith to utilize the discharge right, is it bad faith for a debtor to file a Chapter 13 plan for the sole purpose of extending his tax liability, or to file for the sole purpose of using the cram down provision on a secured creditor? All of these seem to me, to be legal remedies granted by Congress which the Courts should not deny by judicial fiat.

*Lewiston Seaport Plumbing & Heating, Inc. v. Prine (In re Prine)*, 10 B.R. 87 (Bankr.D.Idaho 1981).

Accordingly, after reviewing all the facts and circumstances of this case, the Court finds that the debtor's plan was proposed in good faith and does not violate the spirit or purpose of the provisions of Chapter 13 of the Bankruptcy Code.

## B. *The Disposable Income Test*

Fifth Third also contends that because the debtor did not submit all his disposable income to the plan, the plan does not represent his best effort, and, therefore, violates 11 U.S.C. § 1325(b).

Disposable income is defined, in part, as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A). Specifically, Fifth Third argues that the amount expended by the debtor for transportation is not necessary for his support, but should be contributed to payment of unsecured creditors.

A determination of the reasonableness of a debtor's expenses requires the Court to make a value judgment. Although value judgments, by their nature, are not effective in providing uniform decision-making, bankruptcy courts are often called upon to make such judgments in determining the reasonable necessity of amounts claimed as exemptions, the feasibility of plans, and the defense of undue hardship in student loan dischargeability issues. *In re Sutliff*, 79 B.R. 151 (Bankr.N.D.N.Y.1987).

■ This Court believes that a debtor should not be permitted to indulge in luxury expenses during the course of his Chapter 13 plan at the expense of his creditors. The debtor is entitled to a fresh start, but he is not entitled to "lead the life of Riley." *In re Bryant*, 47 B.R. 21, 26 (Bankr.W.D. N.C.1984). In this Court's opinion, luxury expenses are not reasonable expenses necessary for the debtor's support. On the other hand, a debtor does not have to dedicate his last cent to his creditors, but is entitled to properly support himself and his dependents in a reasonable fashion. *Sutliff*, 79 B.R. at 157.

■ In this case, however, the Court is unable to determine if the debtor is devoting all of his disposable income to payments under his plan. That inability arises not only because the debtor's income and expenses have changed since his case was filed, but also because it is uncertain what expenses are being reimbursed by his new

employer, especially as such reimbursements relate to his transportation costs.

Rather than rule on First Third's objection on the basis of the current record, the Court orders the debtor, within twenty (20) days of the entry of this order, to file a revised statement of all income and expenses, including job-related expenses and reimbursements received from his employer. Such statement must be served upon the Chapter 13 trustee and upon Fifth Third. Any objection to confirmation based upon those expenses must be filed within twenty (20) days of the service of that statement. If no objections are filed with the Court within that period, the Court will consider the confirmability of the plan without an additional hearing. If the amended income and expense statement is not timely filed, confirmation will be denied and the case will be dismissed.

Based upon the foregoing, Fifth Third's objection to confirmation of the plan proposed by Robert Ashton is overruled as such objection is based upon allegations of bad faith. To the extent such objection relates to the disposable income test, the Court's ruling is reserved until after consideration of the debtor's revised statement of all income and expenditures.

IT IS SO ORDERED.