**In the Matter of Antal WILHEIM and Juliana Wilheim, Debtors.**

**Bankruptcy No. 82–01897.**

United States Bankruptcy Court,
D. New Jersey.

May 12, 1983.

John J. Scura by Dona C. Bass, Wayne, N.J., standing trustee.

Linda Irene-Greene, Teaneck, N.J., for debtors.

Gennet & Kallmann by Harvey R. Cooper, Roseland, N.J., for U.S. Fire Ins. Co., et al.

## OPINION

D. JOSEPH DE VITO, Bankruptcy Judge.

This matter concerns objections to confirmation of the Chapter 13 plan of arrangement proposed by joint debtors, Antal and Juliana Wilheim, the first of which, raised by a group of unsecured judicial lien creditors, asserts that the debtors' plan fails the "best interest of creditors" test contained in 11 U.S.C. § 1325[a][4], requiring the present

value of total payments to an unsecured creditor included in a Chapter 13 plan to equal not less than that which would be received if the debtor's estate were liquidated under Chapter 7. *See Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 430 (7th Cir.1982); *Security Insurance Company of Hartford v. Vratanina (In re Vratanina)*, 22 B.R. 453, 455, 9 B.C.D. 614, 615 (Bkrtcy. N.D.Ill.1982); *Collier on Bankruptcy* ¶ 1325.01 at 1325–11 & 12 (15th ed. 1982).

Specifically, the objecting creditors contend that, because their claims may conceivably be nondischargeable under Chapter 7 if the debtors' estate were liquidated pursuant to that Chapter, they would be free to pursue and, possibly, collect 100 per cent of those claims. If accepted, the creditors' argument would require the debtors' plan to satisfy the entire amount of the nondischargeable debts in meeting the minimum payment standard of § 1325[a][4].

The second objection alleges that, because the plan as filed seeks to discharge approximately 75 per cent of a claim that would be nondischargeable under 11 U.S.C. § 523[a][6] in a Chapter 7 proceeding, such proposal is lacking the good faith requirement of 11 U.S.C. § 1325[a][3].

The relevant facts in this matter, as set forth in the Opinion of this Court dated November 30, 1982, are incorporated herein by reference. *See In the Matter of Wilheim,* No. 82–01897 (Bkrtcy.D.N.J. Nov. 30, 1982).

In *In the Matter of Wilheim, supra,* this Court in its Opinion, emphasizing the highly speculative nature of estimating the amount of money that an unpaid creditor could collect on a claim which survives a Chapter 7 proceeding, rejected the creditors' reasoning, holding that § 1325[a][4] does not require a plan to provide for the unliquidated value of a debt which would be nondischargeable in a Chapter 7 proceeding.

Though in its earlier Opinion the Court held that the debtors' plan could satisfy § 1325[a][4] without satisfying 100 per cent of the objecting creditors' claims, the Court did not decide whether the plan, as proposed, fulfilled the minimum payment requirement. The Court did, however, direct the debtors and objecting creditors to supply the Court with calculations showing the comparative values of the payments to the objecting creditors under the plan and the amount they would receive in a hypothetical liquidation without taking into account the unliquidated value of the objectors' claims.

The Court also ordered the parties to use $41,196.62 (the amount of the creditors' judgment plus accrued interest at the statutory rate of twelve per cent from the date of judgment to the filing date of the Chapter 13 petition) as the amount of the objecting creditors' claims, rather than $32,561.32 which represents both the amount of the judgment without interest and the amount which is reflected in the debtors' Chapter 13 statement and plan. The Court further ordered the application of a 12 per cent discount factor to calculate the present value of the payments to be distributed under the plan.

Because the debtors' plan, as modified on October 12, 1982, assumes that the objecting creditors' claims equal $32,561.32, it could not be confirmed in its present form.

However, the calculations submitted by the debtors take account of the correct debt balance and is based on a 49 month repayment plan, as opposed to the previously proposed 47 month plan, presumably to compensate for the increased debt. Other than these two differences, the calculations submitted by the debtors reflect the terms of the proposed plan. In its consideration, the Court will treat the plan as if it was modified to recognize the correct amount of the objectors' claim and to run for 49 months. If the plan can be confirmed as so modified, the debtors will have the opportunity to file a formal modification.

In order to ascertain the amount that the objecting creditors would receive in a hypothetical liquidation, it is initially necessary to determine the liquidation value of the debtors' nonexempt property available for distribution to unsecured creditors after administrative expenses, priority claims and lien claims are paid. 5 *Collier, supra* at 1325–11 & 12.

The property values contained in the debtors' Chapter 13 petition, unchallenged by the objectors, indicate debtors' ownership of an automobile, $50.00 in a checking account, household furnishings and clothing which, together with other personal possessions, are exempt from the debtors' estate pursuant to 11 U.S.C. § 522[d].

In addition, the petition sets forth debtors' ownership of a home having a fair market value of $185,000, subject to liens totaling $155,505, leaving an apparent equity of $29,495 for the estate. The debtors, however, claim $14,695 of their § 522[d][1] exemptions, leaving $14,800 in the estate.

The last noted amount is further subject to administrative expenses and priority claims, such as appraisal fees, trustee's fees and real estate or auctioneer's commissions normally incurred in a Chapter 7 liquidation proceeding.

The computation submitted by the debtors utilizes a cost of sale expense of 8 per cent which, based on a projected sale of the debtors' home for $185,000, amounts to $14,800. Thus, according to the debtors' calculations, the debtors' estate would have no assets for distribution to unsecured creditors in a hypothetical liquidation. In such circumstances, the plan would meet the minimum payment requirement of § 1325[a][4], even though it offered no payments to the objecting creditors.

The Court finds that the 8 per cent sale cost figure used by the debtors exceeds the norm; that a 6 per cent rate should be utilized. Applying the 6 per cent rate reduces the expenses to $11,100, leaving $3,700 to be distributed pro rata among all unsecured creditors in a hypothetical Chapter 7 liquidation.

As indicated in their petition, the debtors owe $40,573.37 to unsecured creditors, not including the amount owed to the objecting creditors. The claims of the objecting creditors total $41,196.62 and comprise 53 per cent of the total unsecured debt. Thus, in a hypothetical liquidation, the objectors would receive 53 per cent of the net liquidation value of the estate, or $1,961 (53% of $3,700).

On the other hand, the debtors' Chapter 13 plan proposes to treat $4,400 of the $41,196.62 claim as a secured debt to be paid in full with interest at 12 per cent, for a total of $5,562.24. Additionally, the plan provides for the repayment of 15 per cent, or $5,519.49, of the $36,796.62 debt balance. In sum, the objecting creditors would receive $11,081.73, or 27 per cent of their claims, during the course of the 49 month plan. It is apparent that, based on a 12 per cent discount factor, the present value of $11,081.73 to be paid in installments over 49 months is greater than $1,961.00, the amount the objecting creditors would receive in a hypothetical liquidation. Consequently, the Court concludes that the debtors' plan satisfies the "best interests of creditors" test contained in § 1325[a][4].

Having determined compliance with § 1325[a][4], the Court turns to the good faith issue as required by § 1325[a][3], specifically that the plan will result in the discharge of approximately 75 per cent of a debt that would not be dischargeable in Chapter 7. Though Congress imposed a "good faith" requirement on Chapter 13 debtors, the Bankruptcy Code does not define that concept, triggering more litigation than any other issue arising under the Code. *See* Cyr, *The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change,* 55 Am.Bankr.L.J. 271, 273 (Summer 1981).

Within the last year, however, several Circuit Courts have decided cases interpreting good faith in the context of Chapter 13. *See United States v. Estus (In re Estus),* 695 F.2d 311 (8th Cir.1982); *Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir.1982); *Barnes v. Whelan (In re Barnes),* 689 F.2d 193 (D.C.Cir.1982); *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982); *Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426 (7th Cir.1982).

Without exception, these decisions teach us that the "good faith" test involves an inquiry into all relevant circumstances of a particular case to determine whether the proposed plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13.

No single factor *per se,* including the inclusion and composition of debt that would not be dischargeable in Chapter 7, constitutes lack of good faith. *See, e.g., In re Rimgale, supra; In the Matter of Raines,* No. 82–00648 (Bkrtcy.D.N.J. Feb. 14, 1983); *In re Tauscher,* 26 B.R. 99 (Bkrtcy.E.D.Wis.1982); *In re Tramonto,* 23 B.R. 464, 9 B.C.D. 861 (Bkrtcy.W.D.N.Y.1982); *In re Vratanina, supra. But see In re Lewis,* 26 B.R. 379 (Bkrtcy.D.Md.1982).

█ Though the circumstances of each case will differ, several factors have been identified as relevant to the good faith inquiry, including:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*See In re Estus, supra,* 695 F.2d at 317 (citing additional cases).

█ Having considered all relevant factors, the Court is satisfied that the debtors' plan is filed in good faith and should be confirmed.

Apart from the $41,196.62 debt owed to the objecting lien creditors, the debtors' petition lists $40,573.37 of unsecured debts owing to 25 creditors, a substantial portion of which appear to be for medical services. In addition, the debtors owe $21,603.96 on account of mortgage arrearages and $6,744.67 for priority claims.

Under the terms of the plan, the priority claims and mortgage arrearages will be paid in full. As noted earlier, the objecting creditors will receive approximately 27 per cent of their claims, while the remaining unsecured creditors will receive 15 per cent of their claims.

To meet the repayment schedule, the debtors propose a 49 month plan, with monthly payments of $971.00 during the first 5 months and payments of $1,059.00 thereafter. According to the Chapter 13 petition, the debtors estimate their monthly income at $4,213.66, monthly expenses of $3,171.50, with approximately two-thirds going towards first and second mortgage payments, with a balance remaining of $1,042.16. This surplus is to be distributed to creditors during the last 44 of the 49 months of the plan. During the initial 5 months, the debtors will have approximately $70.00 on hand after expenses and plan payments.

Notwithstanding debtors' desire to discharge approximately 75 per cent of a debt that would allegedly be nondischargeable in Chapter 7, the Court is of the opinion that, when considered in its entirety, the plan does not abuse the provisions, purpose or spirit of Chapter 13.

The debts owed the objecting creditors are significant, undoubtedly contributing to the need for financial relief. However, there are many other unsecured creditors, with claims approximating in amount that owed to the objectors. Thus, it does not appear that the Chapter 13 petition was filed solely to avoid paying the purported nondischargeable Chapter 7 debt.

The Court is convinced that the proposed repayment plan represents the debtors' best efforts. None of the expenses listed in their petition are for non-essential items or services, and appear reasonable in amount. Except for the $70 monthly surplus during the initial 5 months of the plan, the plan

envisions no surplus over the remaining term of the plan.

In light of their tight budget, the amount of proposed payments to the unsecured creditors is adequate to satisfy the good faith requirement. As noted earlier, unsecured creditors will receive 15 per cent of their claims, except for the objecting judicial lien creditors who will receive 27 per cent. Though not overwhelmingly generous, when considering the debtors' budget, the payments are not de minimus.

Having ruled that the debtors' plan satisfies § 1325[a][3] and § 1325[a][4] if modified to extend the plan term to 49 months and to recognize the correct amount of the objecting creditors' claims, the Court will permit the debtors to file a formal modification reflecting these changes. Upon such action, the Court will order confirmation.

Submit an order in accordance with the above.