### In re Allan Wayne HIEB, d/b/a Al's Diesel Repair.

### Bankruptcy No. 87–40404.

United States Bankruptcy Court, D. South Dakota.

July 28, 1988.

Amy J. Sargent, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.A., I.R.S.

David L. Ganje, Aberdeen, S.D., for debtor.

Rick A. Yarnall, Minneapolis, Minn., Chapter 13 Trustee.

PEDER K. ECKER, Bankruptcy Judge.

This matter is before the Court on the resistance of the United States, on behalf of the Internal Revenue Service, to the debtor's second proposed order approving settlement and action. This order stems from the parties' resolution of their dispute over the amount of the IRS's claim in the debtor's bankruptcy. The debtor and the IRS, however, still disagree on the issue of present value payments on the IRS's claim. The Court agreed to decide this matter on briefs without the necessity of oral argument. The consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### Facts

The debtor filed his Chapter 13 bankruptcy petition on June 18, 1987. His plan acknowledged a dispute with the IRS over the amount of the IRS's unsecured priority claim for pre-petition taxes. The IRS objected to its treatment under the plan. In October, 1987, the debtor's plan was confirmed, reserving for later determination by this Court the issue of the IRS's treatment under the plan.

Subsequent to confirmation, the parties agreed that the principal amount of taxes due was $16,642.71, as set forth in the IRS's amended proof of claim dated February 18, 1988. The plan provided that this amount would be paid over sixty-three months, but it did not call for present value payments on this deferred amount. In its resistance to the proposed order approving settlement and action, the United States alleged that the IRS is entitled to present value payments on the amount the IRS would be entitled to receive in a Chapter 7 liquidation.

### Issue

Whether the IRS is entitled to present value payments on the portion of its claim that it would receive in a Chapter 7 liquidation of the debtor, if the plan defers the

payment of the principal amount over sixty-three months.

### Discussion

This Court holds that the IRS is not entitled to present value payments on the portion of its claim that it would receive in a Chapter 7 liquidation. Any compensation for failure to receive the liquidation value immediately upon confirmation of the plan would result in a "double discounting" of the payments to be received under the plan. The plan, as written, complies with 11 U.S.C. §§ 1322(a)(2) and 1325(a)(4). This holding is based on the following discussion.

Subchapter II of Chapter 13 of the Bankruptcy Code governs the filing, contents, modification, and confirmation of a Chapter 13 plan. In particular, Section 1322 sets out certain mandatory and permissive plan provisions, including the mandatory requirement that priority claims under 11 U.S.C. § 507 be paid in full, in deferred cash payments. *See* 11 U.S.C. § 1322(a)(2). Section 1325 lists six affirmative findings to be made by the bankruptcy court before it can confirm a Chapter 13 plan. *See* 11 U.S.C. § 1325(a). One of these findings is that the plan complies with the provisions of Chapter 13 and with other applicable provisions of Title 11. 11 U.S.C. § 1325(a)(1). Therefore, Section 1325(a)(1) incorporates Section 1322(a)(2) into the requirements for confirmation of the plan.

Another affirmative finding for confirmation of the plan is contained in Section 1325(a)(4). That provision, often called "the best interests of the creditors test," recites that the court shall confirm a plan if—

> [T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4). To put it differently, if the creditor holding the unsecured claim receives deferred payments, the court must compare the total amount of the payments to the creditor, discounted to present value, and the amount the creditor would receive out of the estate in a straight liquidation. *See In re Rimgale*, 669 F.2d 426, 430 (7th Cir.1982); *In re Martin*, 17 B.R. 924, 925 (N.D.Ill.1982). The words, "as of the effective date of the plan," require that a discount factor be applied to the total amount of the payments under the plan, in order to adjust for the time value of money. *See In re Hardy*, 755 F.2d 75, 77 (6th Cir.1985); *Martin*, 17 B.R. at 925; *In re Knipping*, 40 B.R. 865, 867 (Bankr.W.D. La.1984). If the present value of the deferred payments is at least as much as the creditor would receive immediately in a hypothetical liquidation, the court is able to make the affirmative finding as required by 11 U.S.C. § 1325(a)(4).

The debtor has the burden of proof to establish all requisites for confirmation, including the requirements set forth in Sections 1325(a)(4) and 1322(a)(2). *In the Matter of Barth*, 83 B.R. 204, 206 (Bankr.D. Conn.1988). The debtor in the present case alleged that Section 1322(a)(2), which specifically deals with Section 507 priority claims, "controls" over Section 1325(a)(4), which concerns unsecured claims in general, and thus Section 1325(a)(4) is "non-operative" as to unsecured priority claims. Claims given priority pursuant to paragraphs (2) through (7) of Subsection 507(a) are expressly referred to as "unsecured claims." *See* 11 U.S.C. § 507(a)(2)–(7). Section 1325(a)(4) speaks to "each allowed unsecured claim," with no exception for claims given priority status. Therefore, the language of the statute clearly requires that the debtor satisfy "the best interests of the creditors test" as to priority unsecured claims as well as general unsecured claims. *Cf. In the Matter of Herr*, 80 B.R. 135, 136 n. 1 (Bankr.S.D.Iowa 1988) (interest to the IRS would have been required if the best interests of the creditors test required disbursements to unsecured creditors and those disbursements had been made over time); *but see In re Christian*, 25 B.R. 438, 439 (Bankr.D.N.M.1982) (Section 1325(a)(4) applies to unsecured claims in general, but not to unsecured priority claims).

In addition, the two statutes clearly are compatible. The debtor can be required to make deferred payments in cash for the full amount of the claim and, if necessary, be required to pay at least what the IRS would receive in a Chapter 7 liquidation by adding present value payments. "When courts are confronted with statutes 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Wood v. Fiedler*, 548 F.2d 216, 219 (8th Cir.1977), *quoting Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Consequently, the debtor must satisfy both Sections 1322(a)(2) and 1325(a)(4) before the court can order confirmation.

The plan in this case complies with Section 1322(a)(2). Quite simply, the principal amount of the IRS claim is to be paid in full, in deferred cash payments. This section of the Code does not contain the language, "value, as of the effective date of the plan." As noted above, this phrase requires that interest be added to the deferred payments to compensate for the delay. *See In re Nohr*, No. 486–00495, slip op. at 3 (Bankr.D.S.D. Apr. 4, 1988) (Ecker, J.) [available on WESTLAW, 1988 WL 88767], *citing In re Architectural Design, Inc.*, 59 B.R. 1019, 1021 (W.D.Va.1986). Thus, Section 1322(a)(2) does not require a "present value payment" in addition to the full payment of the claim. *See In re Krump*, 89 B.R. 821, 824, (Bankr.D.S.D.1988) (Hoyt, J.) (interpreting identical statutory language contained in 11 U.S.C. § 1222(a)(2)); *Herr*, 80 B.R. at 136 (Section 1222(a)(2)).

Next, the Court must address the confirmation requirement of Section 1325(a)(4). The Court first must determine what the IRS would receive in a hypothetical Chapter 7 liquidation of this debtor's estate. In a no-asset situation, where the IRS would receive nothing in the event of a liquidation, the IRS always would receive more by virtue of any plan payments. *Cf. Krump*, at 824 (creditors with unsecured claims would receive nothing in a Chapter 7 liquidation and, thus, Section 1325(a)(4) need not be addressed); *Herr*, 80 B.R. at 136 (unsecured creditors would not have received a distribution under a Chapter 7 liquidation and, therefore, Section 1325(a)(4) was not considered). On the other hand, if the IRS would receive a 100 percent payment from a straight liquidation, then, without a doubt, present value payments on the deferred principal amount would be required. *See Hardy*, 755 F.2d at 78 (Chapter 13); *In re Hansen*, 77 B.R. 722, 726 (Bankr.D.N.D.1987) (Chapter 12). Therefore, if the IRS would receive nothing, or full payment, in a hypothetical liquidation, the Court would not need to decide the legal issue before it.

The Court must look at the following items in a liquidation analysis of the debtor's assets. First, the liquidation value of the debtor's property is determined. *See Matter of Wilheim*, 29 B.R. 912, 913 (Bankr.D.N.J.1983). Second, lien and mortgage balances and possible Chapter 7 exemptions are deducted to arrive at a net amount available for distribution to creditors with unsecured claims. *See Barth*, 83 B.R. at 205; *Wilheim*, 29 B.R. at 913.

Next, distribution of the funds is made as it would be done in a Chapter 7, according to 11 U.S.C. § 726(a). *See In re Adcom*, 74 B.R. 673, 675 (Bankr.D.Mass.1987); *In re Roberts*, 8 B.R. 155, 156 (Bankr.S.D. N.Y.1981). 11 U.S.C. § 507 claims are paid first, and in the order specified. *See* 11 U.S.C. § 726(a)(1); *see also Adcom*, 74 B.R. at 675. Administrative expenses, including Chapter 7 trustee's fees and properly approved debtor attorney's fees, come first in the distribution. *See Barth*, 83 B.R. at 205; *Roberts*, 8 B.R. at 156. The trustee's fees are calculated from the amount of monies disbursed or turned over by the trustee, including money disbursed to holders of secured claims. *See* 11 U.S.C. § 326(a); *see also Barth*, 83 B.R. at 205; *Roberts*, 8 B.R. at 156. Next, unsecured claims given priority pursuant to 11 U.S.C. § 507(a)(2)–(7) are paid. *See Wilheim*, 29 B.R. at 913; *Roberts*, 8 B.R. at 156. After that, the unsecured claims without priority are paid. *See* 11 U.S.C. § 726(a)(2)–(6).

The Court's liquidation analysis of the debtor's assets is set out in Appendix A. It

**1022**

was very difficult to do this analysis due to the lack of an evidentiary hearing on valuation. The United States gave no indication that it disputed the property values stated in the debtor's schedules and plan. In fact, the United States requested that the Court conduct a liquidation analysis, but submitted no evidence. Therefore, because the United States received a copy of the plan and also could review the schedules, the Court utilized the values as set forth in the debtor's plan and in his schedules in order to conduct the required analysis.

Second, the debtor submitted no evidence of the estimated Chapter 7 costs of asset liquidation. The debtor has the burden of establishing these amounts, if he wishes to have an accurate liquidation analysis. *See Barth,* 83 B.R. at 206. The Court cannot indiscriminately choose a percentage of the assets to deduct as liquidation costs. *See id.* Thus, any costs of asset liquidation were omitted from the Court's liquidation analysis.

After determining that the IRS would receive approximately $5,010.77 in a straight liquidation, *see* Appendix A, the Court's next step is to compare this amount with the discounted value of the stream of payments that the IRS would receive under the plan. Assuming a twelve percent (12%) per annum discount rate (or 1% per month) on the total payment of $16,642.71, the present value of sixty-three monthly payments made at the end of each month is $12,426.46. Therefore, the value of the property to be distributed under the plan to the IRS is not less than the amount that would be paid to the IRS if the estate were liquidated in a Chapter 7, and the plan complies with Section 1325(a)(4).

The United States, however, argued that the IRS should receive present value payments on the portion of its claim that would be paid in a Chapter 7 liquidation proceeding. There is a split of authority on this issue. Only two cases have mentioned Section 1325(a)(4) and the situation where the creditor with an unsecured claim would receive some portion of its claim in a hypothetical Chapter 7 liquidation. Ironically, *In re Redeker,* 27 B.R. 734 (Bankr.D.Kan.

1983), cited by the IRS in support of its position, involved a situation where all creditors with unsecured claims would be paid in full in a straight liquidation. *Id.* at 737. The *Redeker* court held that the creditors with unsecured claims should receive a discount rate on the portion of their claims that would be satisfied in a Chapter 7 liquidation proceeding. *Id. In re Young,* 61 B.R. 150 (Bankr.S.D.Ind.1986), on the other hand, cited by the debtor in support of his position, involved a situation where no funds would be available to the IRS in a Chapter 7. *Id.* at 155. The court in *Young* disagreed with *Redeker* and stated that the unsecured creditors cannot be entitled to present value payments unless the relevant portion of the liquidated distributed value is greater than the present value of the plan payments. *Id.* Neither the *Redeker* nor *Young* courts were actually required to analyze a situation where a portion of the claim would be paid in a Chapter 7 liquidation of the estate.

This Court will follow the holding in *In re Young.* In a Chapter 7 liquidation, the IRS would receive approximately $5,010.77 as soon as possible, parenthetically, without consideration of liquidation expenses. The import of the United States' argument is that the IRS should be given present value payments for the approximately nineteen-month delay in receiving the estimated liquidation amount of $5,010.77. The receipt of present value payments, however, would be "double discounting" the first $5,010.77 to be received under the plan. The "best interests of the creditors test" requires only that the IRS receive a value, over the life of the plan, at least equal to the amount of $5,010.77. The value of $16,642.71 over sixty-three months is equivalent to $12,426.46 on the day of confirmation. Present value payments should be added only if the relevant portion of the liquidated value of the debtor's estate is greater than the value, as of the effective date of the plan, of the amount to be distributed to the IRS under the Chapter 13 plan. *See Young,* 61 B.R. at 155; *see also* 5 *Collier on Bankruptcy* ¶ 1322.03 at 1322-7 to -8 (15th ed. 1988). In the present case, where the value to be re-

ceived under the Chapter 13 plan is much greater than the amount that would be distributed in a Chapter 7, there is no need to add present value payments.

The United States cited one bankruptcy authority in support of its "double discounting" theory. This authority stated that, in addition to determining the present value of the payments under the Chapter 13 plan, the Court must determine the present value of any distributions that might be received by such creditors in a hypothetical Chapter 7 case if the debtor's assets were liquidated on the effective date of the plan and were subsequently distributed to creditors in accordance with the Chapter 7 priorities. *See* Ginsburg, *Bankruptcy* ¶ 14,406 (1985). This interpretation of 11 U.S.C. § 1325(a)(4) contemplated that the creditor would receive several distributions after the estate is liquidated. For example, in the present case, the IRS would not receive $5,010.77 immediately but might have to wait at least six months. *See In re Merrimack Valley Oil Co., Inc.,* 32 B.R. 485, 487 (Bankr.D.Mass.1983). Based on this analysis, the IRS would receive the present value of $5,010.77; that is, some amount *less than* $5,010.77. This authority utilized the "double discounting" concept in a manner much different from that proposed and advocated by the United States. Thus, it does not support the United States' request for present value payments.

It should be noted that this Court does not hold that twelve percent is the appropriate discount factor in this matter. This question was never presented to the Court, nor was evidence or argument submitted by the parties on this point. A rate of twelve percent was used only as an estimate. Any reasonable discount factor would produce the same result with this set of facts.

Accordingly, the above and foregoing hereby constitute the Court's findings of fact and conclusions of law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the debtor is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.

1024

APPENDIX A

| Item of Property | Plan Value | Cost of Asset Liquidation | Net Value | Lienor | Claim (Proofs of Claims) | Exemption | Equity |
|---|---|---|---|---|---|---|---|
| 1. Parts and Inventory | $13,765.00 | | $13,765.00 | | | | |
| Supplies, Tools, and Shop Equipment | $14,250.00 | | $14,250.00 | | | | |
| Accounts Receivable | $15,332.00 | | $15,332.00 | | | | |
| Tractor Proceeds | | | $ 5,500.00 | | | | |
| | | | $48,847.00 | Norwest Bank | $41,777.82 | None | $7,069.18 |
| 2. Residential Real Property | $30,000.00 (Schedules) | | $30,000.00 | Tri-County Bank | $15,000.00 (Schedules) | S.D.C.L. § 43-31-1 | None |
| 3. Commercial Real Property | $30,000.00 (Schedules) | | $30,000.00 | 1) Brule County 2) Norwest Bank | $ 1,280.86 $65,738.65 | None | None |
| 4. 1978 Boat, Trailer, Motor | $ 3,250.00 | | | | | | |
| 5. 1980 Pickup | $ 1,000.00 | | | | | | |
| 1974 Car | $ 200.00 | | | | | | |
| 6. Household Goods | $ 1,050.00 | | | | | | |
| 7. Personal Effects | $ 100.00 | | | | | $4,000.00 S.D.C.L. § 43-45-4 | $1,600.00 |
| | $ 5,600.00 | | | | | | |

FUNDS AVAILABLE FROM ASSETS IN EXCESS OF LIENS AND EXEMPTIONS . . . . . . . . . $8,669.18

LESS CHAPTER 7 TRUSTEE'S FEES . . . . . . . . . . . . . . . -$2,593.41

LESS SUPPLEMENTAL ATTORNEY'S FEES (PROOF OF CLAIM NO. 20) . . . . . . . . -$1,065.00

FUNDS AVAILABLE FOR CREDITOR WITH PRIORITY CLAIM (IRS). . . . . . . . . $5,010.77