By: _____           By: _____
                                        , President
Title: Vice President of Human Resources
Date: February 2, 1984

**In re Bruce Martin SMITH.**

**Bankruptcy No. 95–3485–BKC–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 8, 1996.

Michael S. May, DeLand, Florida, for debtor.

Charles Baer, Special Asst. U.S. Atty., Jacksonville, FL, for I.R.S.

Mamie L. Davis, Trustee, Jacksonville, FL.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon the United States', on behalf of its Internal Revenue Service (IRS), objection to confirmation of debtor's Chapter 13 plan. After a confirmation hearing on February 13, 1996, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Debtor filed for relief under Chapter 13 of the Bankruptcy Code on July 24, 1995.

2. Debtor's schedules list total assets as $553,350 and total liabilities as $403,447.70.

3. The schedules list three parcels of real property: a $108,000 house in Port Orange, Florida, subject to a $86,686.16 secured claim; a $263,500 cottage in England, subject to a $139,500 secured claim; and a $20,000⅓ interest in undeveloped land in Homer, Alaska, not subject to any secured claim. (United States Ex. 1).

4. The schedules also list $161,850 in personal property, subject only to a $1,031 lien on a car. (United States Ex. 1).

5. Debtor claimed his Port Orange house as homestead exempt. (United States Ex. 1).

6. The schedules show $144,157.70 in unsecured priority debt for 1993 and 1994 federal taxes. Debtor also lists $32,073 in unsecured non-priority debt for miscellaneous loans and credit card balances. (United States Ex. 1).

7. Debtor's Schedule I shows monthly wages from his employment as an airline pilot, including overtime, of $13,000. Debtor also receives a monthly pension of $1,035, for a total annual income of $168,420. (United States Ex. 1).

8. Debtor's Schedule I shows payroll deductions of $4,224 per month, including $786 per month for a 401(k) plan and $2,861 federal income tax withheld from his salary. (United States Ex. 1).

9. Schedule J shows total monthly expenses of $9,756.48. That sum includes payment on the mortgage on the England property of $1,149; $613 on the Citibank loan; $469.57 on his automobile; and a $1,000 per month payment to Dr. Allan Gerson. It shows $500 per month in telephone expenses; $81 per month in storage; $300 per month in home maintenance; $450 per month in food; and $95 per month for recreation. Schedule J also shows $3,051 in withheld tax, apparently duplicating the tax withheld shown on Schedule I. (United States Ex. 1).

10. Debtor's Schedule J stated that, after October 1, 1995, his projected monthly income will be $12,000, and called for plan payments of $2,200. (United States Ex. 1).

11. The plan before the Court calls for plan payments of $2,200 for the first five months of the plan and $5,565.07 for months six through sixty of the plan. The plan calls for Barnett Mortgage to receive $882.55 for months six through sixty of the plan for its secured mortgage on debtor's Port Orange property, and for Abbey National to receive $1,235 for months six through sixty on its secured claim on debtor's England property. Debtor's amended plan states that he paid these creditors outside the plan for months one through five, and calls for these creditors to retain their liens until these secured claims are paid in full.

12. The plan calls for payments to Delta Employees Credit Union of $17.93 per month until the $985.79 secured claim on debtor's automobile is paid in full.

13. The plan calls for the payment of $52.23 per month on the secured portion of the federal tax claim during months six through sixty of the plan. The plan calls for payment of interest at 9% on the secured tax claim, but does not call for the United States to retain its lien.

14. The plan calls for payments to general unsecured creditors of $2,068 for plan months one through five and $699.72 for months six through sixty. Unsecured creditors are to receive payments totalling 100% of their claims without interest.

15. The plan calls for payments of $2,343.73 per month for months six through sixty on the IRS priority claim for income taxes of $128,904.87. It does not call for interest to be paid on that claim.

16. On February 5, 1996, the IRS filed an amended proof of claim for $147,360.36, including $2,346.58 for secured tax liabilities and $128,904.87 for priority tax liabilities. (Tr. at 19).

17. On February 2, 1996, the IRS filed a memorandum in opposition to debtor's plan, arguing that the plan should not be confirmed because it fails to meet the requirements of 11 U.S.C. § 1325(a) and (b).

18. At the confirmation hearing, debtor placed into evidence an amendment to his

schedules which added the following to his list of exempt property:

$1,000 checking account

Delta pension, amount unknown

$18,000 Delta 401(k) plan

$115,000 IRA

$1,000 value of 1992 Saturn

The amendment also claims the Florida Constitutional, as well as statutory, exemption of debtor's homestead. (Debtor's Ex. 2).

19. Debtor also placed into evidence a liquidation analysis which valued his non-exempt property at $153,719, after deductions for the Trustee's fees and fees for the Trustee's attorney. (Debtor's Ex. 1).

20. At the hearing, debtor testified that there would be additional legal and sale expenses for the England property and the Alaska property which would reduce the amount available in a liquidation to $130,000. (Tr. at 9–12).

### CONCLUSIONS OF LAW

■ To be confirmed, a Chapter 13 plan must satisfy the criteria of 11 U.S.C. § 1325 and comply with other applicable provision of the Bankruptcy Code. 11 U.S.C. § 1325(a)(1). "The [debtor has] the burden of showing the Court that [his] plan meets the ... requirements for confirmation...." *In re Humphrey,* 165 B.R. 508, 510 (Bankr. M.D.Fla.1994).

### I. Full Payment of Claims—§ 1322(a)(2)

■ The IRS first objects to confirmation of debtor's plan on the basis that the plan does not satisfy the "best interests of creditors" test of 11 U.S.C. § 1325(a)(4). The debtor argues that the best interests test has been satisfied because the plan proposes to pay each claim in full in accordance with 11 U.S.C. § 1322(a)(2).

Section 1322(a)(2) states that a Chapter 13 plan shall "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim...." 11 U.S.C. § 1322(a)(2). The debtor argues that because § 1322(a)(2) does ·not include

language requiring a present value payment in addition to full payment of an unsecured claim, the payment of interest is not required. (Debtor Brief at 1–5). A leading Bankruptcy treatise phrases debtor's argument as follows:

> [W]hile § 1322(a)(2) requires payment in full of priority claims, it does not provide for payment of their present value as of the effective date of the plan. Therefore, the payment of interest on priority claims is not required unless the court finds it necessary to satisfy the best interests of creditors test.

5 *Collier on Bankruptcy* § 1322.03 at 1322–8 (15th ed. 1995).

Other Bankruptcy courts have noted that "when Congress intended to provide a claim-holder with interest to compensate for the present value of a claim, it expressly provided for that treatment by the use of specific words, such as, '*value, as of the effective date of the plan equal to the allowed amount of such claim.*' The absence of those words in § 1322(a)(2) could not have been an oversight." *In re Kingsley,* 86 B.R. 17, 20 (Bankr.D.Conn.1988) (emphasis supplied). This Court finds that § 1322(a)(2) does not require the payment of interest.

Debtor's plan proposes to pay all claims in full without interest. Thus, the plan meets the requirements of § 1322(a)(2). However, the plan must still satisfy all the requirements of § 1325, including the best interests test of § 1325(a)(4).

### II. Best Interests of Creditors Test—§ 1325(a)(4)

■ The "best interests of creditors" test is contained in 11 U.S.C. § 1325(a)(4), which states that a court shall confirm a plan if

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date....

11 U.S.C. § 1325(a)(4).

Section 1325(a)(4) requires a comparison of the value of a claim holders interest "as of

the effective date of the plan" and the amount that claimant could receive in a liquidation. The phrase "as of the effective date of the plan" has prompted some controversy over whether § 1325(a)(4) requires the payment of interest on unsecured claims.

The IRS argues that § 1325(a)(4) *does* require the payment of interest and relies on a decision from the Eleventh Circuit Court of Appeals, which states that "[t]he legislative history of the [Bankruptcy] Code indicates that Congress used the phrase 'value, as of the effective date of the plan' in order to insure that creditors with priority tax claims who were required to accept payments over time would receive deferred payments equivalent to the present value of their claims." *United States v. Southern States Motor Inns, Inc. (In re Southern States Motor Inns, Inc.),* 709 F.2d 647, 650 (1983).

The *Southern States* decision, however, related to a Chapter 11 confirmation, and this Court finds it inapplicable to this case. Rather, this Court agrees with the majority of Bankruptcy courts which have found that interest payments are only required if all unsecured claims would be paid in full if the estate were liquidated. In *In re Hieb,* 88 B.R. 1019 (Bankr.D.S.D.1988), the Bankruptcy court acknowledged that "if the IRS would receive a 100 percent payment from a straight liquidation, then, without a doubt, present value payments on the deferred principal amount would be required." *Id.* at 1021.

The court concluded, however, that "where the value to be received under the Chapter 13 plan is much greater than the amount that would be distributed in a Chapter 7, there is no need to add present value payments." *Id.* at 1022–23. This theory follows a line of cases which have held that awarding interest under § 1325(a)(4) would "double discount" the value of the stream of payments the IRS would receive under the plan. *Id.* at 1022. *See In re Christian,* 25 B.R. 438 (Bankr. D.N.M.1982); *In re Ridgley,* 81 B.R. 65 (Bankr.D.Or.1987).

This Court holds that § 1325(a)(4) does not require the payment of interest on deferred payments of unsecured claims. Under the debtor's plan, the IRS will receive 100 percent of both the secured and unsecured portions of its claim. Debtor's analysis, however, reveals that only $130,000 would be available for creditors upon liquidation. Thus the IRS would likely only recover the value of its secured claim and its priority unsecured claim. The Court finds it in the best interest of the IRS and the other unsecured creditors to be paid through the plan.

### III. Disposable Income Test—§ 1325(b)

■ Section 1325(b) mandates that "debtors pay either 100 percent of the unsecured claims against the estate or use all of their disposable income to fund the plan." *In re Humphrey,* 165 B.R. 508, 510 (Bankr. M.D.Fla.1994). In relevant part, the statute states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> > (A) for the maintenance or support of the debtor or a dependant of the debtor....

11 U.S.C. § 1325(b).

To evaluate compliance with § 1325(b), the Court must first determine whether the plan proposes to pay the full amount of unsecured claims. The IRS argues that debtors plan fails to satisfy this prong of § 1325(b)(1) because the plan does not include the payment of interest on unsecured claims.

In support of its position, the IRS argues that because § 1325(b)(1) contains language virtually identical to the phrase "value, as of the effective date of the plan," the subsection requires the payment of interest to account for the loss of value on deferred payments paid through the plan. Additionally, the IRS argues that the plain meaning rule requires the Court to find that the words used in § 1325(b)(1) should be construed to have the same meaning as they do in other parts of the Code which *do* allow the payment of interest. *United States v. Ron Pair Enterprises Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). *See also In re Rhein,* 73 B.R. 285, 287 (Bankr.E.D.Mich. 1987) (holding that "[t]here is no reason why the words in one section in a code should have any different meaning ascribed to them than nearly identical words appearing in other sections of the same code." *Id.* at 288.).

This Court, however, disagrees with the IRS argument. The Court finds that sections 1325(a)(4) and (b) should be interpreted consistently. Thus, because interest payments to unsecured creditors are not required under § 1325(a)(4), they should not be required under § 1325(b).

Debtor's plan proposes to pay each unsecured claim in full. Each unsecured creditor will receive the full value of its claim, thus the plan satisfies the full payment requirement of § 1325(b)(1)(A) and an analysis of the disposable income test is unnecessary.

■ The Court, however, finds that even if it were to employ the disposable income test, the IRS objection would fail. The IRS argues that several of debtor's claimed expenses are inappropriate for a Chapter 13 debtor. The Court, however, has held that § 1325(b)(1)(B) only requires that a debtor use all of his disposable income to fund the plan, and that the value judgment of what types of debts should be paid through the plan is best determined under the good faith requirement of § 1325(a)(3). *In re Humphrey,* 165 B.R. 508, 510 (Bankr.M.D.Fla. 1994).

Debtor's schedules indicate that his monthly income is $14,035 and his monthly expenses total $9,756. At the confirmation hearing, the debtor testified that he experi-

enced a $2,000 reduction in his income due to his inability to rent his England property. (Tr. at 15). Debtor further testified that he anticipated a reduction in is salary. (Tr. at 3–13). In addition, debtor stated that he anticipated greater expenses associated with his attempts to sell the England property. (Tr. at 10).

Debtor's plan proposes to pay to the trustee $2,200 per month for months one through five of the plan and $5,565.07 for months six through sixty. Without considering debtor's decrease in income and increased expenses, his monthly disposable income for months one through five would be $4,279. After the plan payment, debtor would still have $2,079 of disposable income. For months six through sixty, debtor would have no disposable income because the amount of the proposed plan payment exceeds debtor's expected $4,279 monthly disposable income. Under this schedule of payment, the debtor's contribution of his disposable income will "balance out" during the life of the plan.

The Court finds that these calculations, coupled with debtor's projected loss of income and increased expenses indicate that debtor is applying all of his disposable income to the plan. Without considering the propriety of debtor's claimed expenses or the feasibility of the plan, the Court finds that the plan meets the requirements of § 1325(b)(1)(B).

### IV. Good Faith—§ 1325(a)(3)

■ Section 1325(a)(3) requires that a debtor file his plan "in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "In conducting the good faith inquiry, the totality of the circumstances must be considered." *In re Humphrey,* 165 B.R. 508, 510–11 (Bankr.M.D.Fla.1994).

■ The Eleventh Circuit has approved a non-exclusive list of factors for determining good faith:

1. the amount of the debtor's income from all sources

2. the living expenses of the debtor and his dependents

3. the amount of attorney's fees

4. the probable or expected duration of the debtor's chapter 13 plan

5. the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13

6. the debtor's degree of effort

7. the debtor's ability to earn and the likelihood of fluctuation of his earnings

8. special circumstances such as inordinate medical expense

9. the frequency with which the debtor has sought bankruptcy protection

10. the circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors

11. the burden which the plan's administration would place on the trustee

12. any exceptional circumstances in the case

13. the type of debt and whether it would be nondischargeable in chapter 7

14. accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. . . .

*Id.* at 511 (quoting *In re Kitchens,* 702 F.2d 885, 888 (11th Cir.1983)). Although all of these factors are not relevant to every Chapter 13 case, they are designed to assist the Court in determining whether the debtor has abused the spirit of the Code or abrogated any of its provisions. "[W]hile the debtor bears the ultimate burden of proof on the [good faith] issue, to the extent that a creditor preemptively can demonstrate an absence of good faith, or the affirmative presence of bad faith, it will enjoy a valid objection to confirmation." *In re Hutcherson,* 186 B.R. 546, 550 (Bankr.N.D.Ga.1995) (citing *Shell Oil Co. v. Waldron (In re Waldron),* 785 F.2d 936, 937–41 (11th Cir.1986)).

The IRS argues that debtor's plan fails to meet the good faith requirement for the following reasons:

(1) debtor's claimed $500 per month telephone bill is excessive;

(2) debtor should not include expenses for an adult child dependent without demonstrating special circumstances;

(3) debtor is building equity in his 401(k) plan and other assets at the expense of his creditors;

(4) debtor filed for chapter 13 relief to avoid payment of his tax obligation; and

(5) debtor has paid other creditors outside the plan.

(IRS Brief·at 15–17).

Based on the IRS objection, the most important inquiry for this Court is whether debtor's claimed debts and expenses are consistent with the spirit of the Bankruptcy Code.

■ The IRS argues that debtor's high telephone bill, investment property, savings plan, and support of his adult child are luxury expenses which illustrate debtor's refusal to effectuate lifestyle changes commensurate with this financial difficulties. Inclusion of such luxury items in a debtor's plan of reorganization, however, is not necessarily indicative of bad faith. *In re Jones,* 119 B.R. 996 (Bankr.N.D.Ind.1990). Rather, such items are to be considered in the totality of the circumstances. *Id.*

■ Some Bankruptcy courts have held that a debtor should not be permitted "to use a Chapter 13 plan to retain and increase [his] equity in investment property at the expense of [his] unsecured creditors." *In re Lindsey,* 122 B.R. 157, 158 (Bankr.M.D.Fla.1991). In this case, however, the debtor testified that he is attempting to sell the investment property but has encountered difficulty in doing so. The Court finds that debtor's retention of his investment property is not a bad faith attempt to deprive his creditors of the value of their claims. The plan provides that all claims will be paid in full, and the Court finds that neither the IRS nor the other creditors are harmed by debtor's retention of the investment property.

■ The Court also finds that debtor's contribution to his savings plan is not a bad faith attempt to avoid payment to his creditors. Although debtor's savings allotment could be used to increase his monthly plan payment, it would not increase the amount any creditor would receive under the plan.

Thus, the Court finds that debtor's savings contribution is made in good faith.

■ The IRS has offered no evidence to support its argument that the debtor's telephone expenses are excessive. While an average Chapter 13 debtor might not toll such a high monthly bill, debtor in this case is an airline pilot who travels for a profession. The Court finds that without contradicting evidence, the debtor's telephone bill is not excessive and is not claimed as an expense in bad faith.

■ The Court also finds that the IRS has failed to prove that debtor filed his petition solely to avoid payment of his tax obligation. As evidenced by debtor's schedules, he has other debts which have contributed to his financial difficulty. The IRS produced insufficient evidence to prove that the debtor's petition was filed in a bad faith attempt to hinder tax collection attempts.

■ Debtor's plan fully discloses that he mistakenly made payments to two creditors outside the plan. The Court finds that the debtor did not attempt to conceal this information, and that the other creditors have not been prejudiced by debtor's inadvertence.

■ Two Bankruptcy courts in the Eleventh Circuit have held that a debtor's support of an adult child is not a legal obligation, and that a debtor should utilize those support funds for the benefit of his creditors. *In re Clements,* 185 B.R. 903 (Bankr.M.D.Fla.1995) and *In re Davidoff,* 185 B.R. 631, 635–36 (Bankr.S.D.Fla.1995). Although this Court agrees that support of an adult child is not a legal obligation, in this case, the debtor's creditors are not in any way harmed by debtor's claimed expenses related to his dependent child. According to debtor's schedules, the debtor does not expend "extra" money on behalf of his child. Rather, he only includes him as a dependent for purposes of listing his household expenses. The Court finds that debtor's support of his adult child is not indicative of bad faith.

Considering the totality of the circumstances, the Court finds that the debtor has filed his petition in good faith and has been candid with both the Court and his creditors.

The plan is filed in accordance with § 1325(a)(3).

### V. *Conclusion*

Debtor's plan meets the full payment requirement of § 1322(a)(2). The plan proposes to pay all claims, including unsecured claims, in full and is in the best interest of debtor's creditors pursuant to § 1325(a)(4). Debtor proposes to fund the plan with all of his disposable income in accordance with § 1325(b). The plan was filed in good faith under the provisions of § 1325(a)(3). The Chapter 13 trustee recommends confirmation of the plan and the Court agrees that the provisions of § 1325 have been met. By separate order, the Court will overrule the IRS objection to confirmation and direct the trustee to prepare a confirmation order.

### ORDER OVERRULING OBJECTION TO CONFIRMATION AND DIRECTING TRUSTEE TO PREPARE CONFIRMATION ORDER

This case came before the Court upon the United States', on behalf of its Internal Revenue Service (IRS), objection to confirmation of debtor's Chapter 13 plan of reorganization. Upon findings of fact and conclusions of law separately entered, it is

ORDERED:

1. The objection to confirmation is overruled.

2. The plan will be confirmed.

3. The Chapter 13 Trustee shall prepare a confirmation order.